# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MYRON J. BERMAN,                            )
                                            )
      Plaintiff,                        )
                                            )
     v.                                 )     C.A. No. 02-CV-6859
                                            )
ARNOLD T. BERMAN, M.D.                      )
                                            )
      Defendant.                        )

## ORDER

AND, NOW this _____ day of _____, 2003, upon

consideration of Plaintiff's Emergency Motion for Preliminary Injunction and Defendant's

response thereto, it is hereby ORDERED and DECREED that Plaintiff's Motion is GRANTED.

Accordingly, the Court hereby ORDERS as follows:

     1.     All funds remaining from the proceeds of the sale of the Partnership's

Property consisting of 219 to 225 North Broad Street, Philadelphia, PA (the "Transaction"), after

payment of expenses (including mortgage payments not to exceed $2.3 million) and closing

costs, shall be immediately deposited in an escrow account (the "Escrow Account") upon

closing.  The Escrow Account shall be maintained by a banking/financial institution or other

escrow agent mutually agreed to by Plaintiff and Defendant or in the alternative, if no such

agreement can be reached, then by Order of the Court.

     2.     The Prospective Buyer in the Transaction shall be notified by Defendant's

counsel of this Order as soon as possible.  Defendant shall also provide to the title clerk and/or

closing agent on or before three (3) days prior to closing, instructions on the transfer the Sale or

Refinancing Proceeds to the Escrow Account.

3.     On or before any deposit of escrowed funds into the Escrow Account, Defendant shall provide Plaintiff with copies of all closing documents relating to the Transaction including settlement sheets identifying the distribution of proceeds from the Transaction.

4.     The escrowed funds in the Escrow Account shall not be distributed to either Partner prior to resolution of the above-captioned action, except upon petition to and approval by the Court, and shall thereafter be distributed in accordance with any judgment entered by this Court or Settlement Agreement reached between the parties.

**SO ORDERED,**

**BY THE COURT:**

_____

CYNTHIA M. RUFE
UNITED STATES DISTRICT JUDGE

-2-

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MYRON J. BERMAN,                    )
                                    )
       Plaintiff,                  )
                                    )
      v.                          )          C.A. No. 02-CV-6859
                                    )
ARNOLD T. BERMAN, M.D.              )
                                    )
       Defendant.                  )

### ALTERNATIVE ORDER

AND, NOW this _____ day of _____, 2003, upon

consideration of Plaintiff's Emergency Motion for Preliminary Injunction and Defendant's

response thereto, it is hereby ORDERED and DECREED that Plaintiff's Motion is GRANTED.

Accordingly, the Court hereby ORDERS as follows:

      1.      All funds remaining from the proceeds of the sale of the Partnership's

Property consisting of 219 to 225 North Broad Street, Philadelphia, PA (the "Transaction"), after

payment of all expenses (including payments on the outstanding mortgage to Sun National Bank)

and closing costs, shall be immediately deposited in an escrow account (the "Escrow Account")

upon closing.  The Escrow Account shall be maintained by a banking/financial institution or

other escrow agent mutually agreed to by Plaintiff and Defendant or in the alternative, if no such

agreement can be reached, then by Order of the Court.

      2.      The Prospective Buyer in the Transaction shall be notified by Defendant's

counsel of this Order as soon as possible.  Defendant shall also provide to the title clerk and/or

closing agent on or before three (3) days prior to closing, instructions on the transfer the Sale or

Refinancing Proceeds to the Escrow Account.

       3.      On or before any deposit of escrowed funds into the Escrow Account, Defendant shall provide Plaintiff with copies of all closing documents relating to the Transaction including settlement sheets identifying the distribution of proceeds from the Transaction.

       4.      The escrowed funds in the Escrow Account shall not be distributed to either Partner prior to resolution of the above-captioned action, except upon petition to and approval by the Court, and shall thereafter be distributed in accordance with any judgment entered by this Court or Settlement Agreement reached between the parties.

       5.      Should Defendant use the proceeds from the Transaction to satisfy the mortgage on the Property in excess of $2.3 million, then Defendant shall be enjoined from engaging in any sale or refinancing of the property located at 1101 North 63rd Street, Philadelphia, PA, or placing any other encumbrance on that property pending resolution of this lawsuit or unless otherwise permitted to do so by Order of the Court.

.

**SO ORDERED,**

**BY THE COURT:**

_____

CYNTHIA M. RUFE
UNITED STATES DISTRICT JUDGE

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MYRON J. BERMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 02-CV-6859 |
| | ) | |
| ARNOLD T. BERMAN, M.D. | ) | Oral Argument Requested |
| | ) | |
| Defendant. | ) | |

### PLAINTIFF'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

Pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, Plaintiff Myron J. Berman ("Plaintiff") moves the Court to enter a preliminary injunction against Defendant Arnold T. Berman, M.D. ("Defendant"). Plaintiff requests expedited consideration and oral argument on his Motion. The grounds for and reasons in support of Plaintiff's Motion are set forth in the accompanying Memorandum of Law.

Respectfully submitted,

Neill C. Kling
Attorney I.D. No. 53261
David W. Engstrom
Attorney I.D. No. 76178
**HARKINS CUNNINGHAM**
2005 Market Street, 28th Floor
Philadelphia, PA 19101-7042
Tele: (215) 851-6700
Fax: (215) 851-6710

Dated: June 24, 2003

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MYRON J. BERMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 02-CV-6859 |
| | ) | |
| ARNOLD T. BERMAN, M.D. | ) | Oral Argument Requested |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF**
**EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**

**I.    INTRODUCTION**

As the Court is aware, this case involves a limited partnership, 219 North Broad Street Partners Ltd. ("Partnership"). The Complaint alleges that Defendant Arnold T. Berman, M.D. ("Defendant"), the general partner, has for years wrongly denied information pertaining to the business affairs of the Partnership to Plaintiff Myron J. Berman ("Plaintiff"), the sole limited partner. (See Compl. ¶¶ 18-28.) The Complaint also alleges on information and belief that Plaintiff was deprived of his share of proceeds from leases and refinancings of the property of the Partnership (219 North Broad Street or the "Property") for several years. (See id. ¶¶ 20-28, 39-41.) After Defendant failed timely to respond to the Complaint, the Court held a hearing on March 17, 2003 and ordered the production of information from Defendant to Plaintiff in a manner that was to be agreed by the parties. On March 26, 2003, the Court entered a Stipulation and Proposed Order ("Order") which instructed Defendant to provide documentation set forth therein to Plaintiff within certain time periods. (Order ¶ 2.) The Court ordered Defendant to give Plaintiff ten (10) days prior written notice of any lease, lease amendment, sale or refinancing

of the Property.  (<u>Id</u>. ¶ 5.)  The Court also ordered Defendant to provide Plaintiff by June 15, 2003 with an accounting of the proceeds of any leases, loans or refinancings on the Property from January 1, 1998 through the present.  (<u>Id</u>. ¶ 3.)  To date, Plaintiff has not received such an accounting.

From the documentation that has been produced, however, it is clear that the proceeds from the $3.6 million refinancing of the Property in April 2002 (Compl. ¶ 21) went not only to pay down the then-existing mortgage on 219 North Broad Street of approximately $2.3 million, but also to pay down an existing mortgage of approximately $1.3 million on a property at 1101 North 63rd Street.  The 1101 North 63rd Street property is not owned by the Partnership, but rather by 1101 North 63rd Street LLC, a limited liability company of which Defendant is the sole member.   As set forth more fully herein, the portion of the loan that was attributable to paying off the 1101 North 63rd Street mortgage was cross-collateralized by the 219 North Broad Street and 1101 North 63rd Street properties, and then only up to $800,000, which meant that approximately $500,000 of the mortgage paydown on 1101 North 63rd Street was collateralized exclusively by the Partnership's Property.  Despite the fact that the Limited Partnership Agreement ("Partnership Agreement") prohibits the General Partner "from entering into any agreements, contracts or arrangements on behalf of the Partnership with himself or any Affiliate of a General Partner without the prior written approval of the Limited Partner" (Compl. Ex. A § 7.2A), Plaintiff was not even notified of the refinancing, much less provided with an opportunity to comment upon the payment of the 1101 North 63rd Street mortgage with its proceeds.  We set forth the evidence for these assertions in detail <u>infra</u>, but include it here in summarized form so that the Court may understand the nature of Plaintiff's motion more clearly.

Plaintiff has since been informed that the Partnership Property is to be sold to the tenant, Philadelphia Health and Education Corp. d/b/a MCP Hahnemann University ("Tenant"), as early as this Monday, June 30, 2003. (See Letters from Anthony Valenti, Esq. to Neill C. Kling, Esq. dated June 10, 2003 and June 19, 2003, attached hereto at Exs. 1 and 2 respectively.) The sale will be pursuant to the purchase option in the November 7, 2001 Master Lease between the Partnership and the Tenant, at a fixed price of $4.2 million. In the days since the notification, the parties have been negotiating a stipulation and proposed order which would require the proceeds of that sale to be escrowed in order to protect them for distribution under the Partnership Agreement, and to satisfy any judgments that may be issued in this case. However, the negotiations have broken down over the issue of how much of the $3.6 million refinanced mortgage is to be taken from the proceeds of the sale of the Property. Plaintiff contends that the Partnership is entitled to any proceeds that exceed the original $2.3 million mortgage on the Property – the other amounts being attributable to the paydown of the 1101 North 63rd Street mortgage – and that deducting the full $3.6 million of the refinanced loan from the sale proceeds will, once again, benefit Defendant's 1101 North 63rd Street LLC at the Partnership's (and therefore Plaintiff's) substantial expense. Therefore, in order to protect his interest, Plaintiff has requested that, should the deduction of proceeds for mortgage payments in the proposed transaction exceed $2.3 million, he be given twenty (20) days written notice of any sale or refinancing of or other encumbrance on the 1101 North 63rd Street, and that proceeds from that sale, refinancing or other encumbrance be escrowed as well and subject to the judgment of this Court. Defendant has rejected that request.

Therefore, pursuant to Rule 65(a) of the Federal Rules of Civil Procedure,

-3-

Plaintiff moves the Court to enter a preliminary injunction in the nature of an escrow account to hold proceeds from the sale of property owned by the Partnership. This relief will prevent dispersal of the proceeds from this transaction, which constitute Sale or Refinancing Proceeds under the Partnership Agreement and also protect (at least in part) Plaintiff's claims against Defendant for breach of the Partnership Agreement and for breach of his duties as general partner pending the outcome of this action.

Moreover, as set forth above, Plaintiff believes that Defendant will attempt to use the proceeds from the sale of the Partnership's Property to satisfy debts attributable to paying down a mortgage on 1101 North 63rd Street. Plaintiff has not consented in writing to the use of the Partnership Proceeds in that manner and therefore seeks an injunction against such use. (See Compl. Ex. A § 7.2A.) In the alternative, should such use be permitted, Plaintiff moves the Court for preliminary relief enjoining Defendant from engaging in any sale or refinancing, or permitting any other encumbrance to be placed upon the 1101 North 63rd Street property pending resolution of this litigation or unless permitted to do so by an Order of the Court.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     The Partnership And Duties Regarding Sale Or Refinancing Proceeds

The Partnership was created by the Partnership Agreement which is dated August 1982. (Compl. ¶ 6.) Under the Partnership Agreement, as amended, Defendant is the general partner of the Partnership and Plaintiff is the sole limited partner. (See id. ¶¶ 6, 18-19; see Compl. Exs. A & B.)

The Partnership Agreement provides that the purpose and character of the business of the Partnership "shall be to acquire, hold, maintain, develop, improve, operate, sell,

lease, finance, dispose of and otherwise invest in and deal with the property located at 219 North

Broad Street, Philadelphia, Pennsylvania ('Property')."  (Compl. Ex. A § 2.2.)  Article VI of the

Partnership Agreement provides for the distribution of cash proceeds from the Partnership.  It

provides that "[a]ll Distributable Cash for each fiscal quarter shall be distributed quarterly

(within 60 days after the close of each fiscal quarter) 60% to the General Partner and 40% to the

Limited Partner."  (Id. § 6.1.)  Article VI further provides "[a]ll Sale or Refinancing Proceeds

shall be distributed as follows: (i) first, to the Partners in an amount equal to their Adjusted

Capital Contributions; and (ii) then, 60% to the General Partner and 40% to the Limited Partner."

(Id. § 6.2.)

The Partnership Agreement defines a "Sale or Refinancing" as "any Partnership

transaction (other than the receipt of Capital Contributions) not in the ordinary course of its

business, including, without limitation, sales, exchanges or other disposition of the Property,

condemnations, recoveries or damage awards and insurance proceeds (other than business or

rental interruption insurance proceeds) not reinvested in the repair or reconstruction of Property

or any mortgage refinances or borrowings in addition to borrowings initially made to finance the

purchase of Property."  (Compl. Ex. A at 5).  The Partnership Agreement defines "Sale or

Refinancing Proceeds" as "all cash receipts arising from a Sale or Refinancing less the following:

(i) the amount of cash necessary for the payment of all debts and obligations of the Partnership

(including nonrecourse debts) related to the particular Sale or Refinancing; (ii) the amount of

cash paid or to be paid by the Partnership in connection with such Sale or Refinancing (which

shall include, with regard to damage recoveries or insurance or condemnation proceeds, cash

paid or to be paid in connection with repairs, replacements or renewals, in the discretion of the

General Partner, relating to damage to or partial condemnation of the Property); and (iii) the amount considered appropriate by the General Partner to provide Reserves to pay taxes, insurance, debt service, repairs, replacements or renewals, or other costs or expenses of the Partnership (including costs of improvements or additions in connection with the Property)." (Id.)  Finally, the Partnership Agreement prohibits the General Partner "from entering into any agreements, contracts or arrangements on behalf of the Partnership with himself or any Affiliate of a General Partner without the prior written approval of the Limited Partner." (Compl. Ex. A § 7.2A.)

      **B.**    **Plaintiff Files This Lawsuit**

      For several years, Plaintiff had surmised, from the partnership K-1 statements, that the Partnership had reported a loss in each of the years reported.  (Compl. ¶ 20.)  In June 2002, however, Plaintiff learned in the course of his other business activities that there had been a major refinancing of the Property consisting of a mortgage from Sun National Bank  ("Sun Bank") on the Property in the amount of $3.6 million.  (Id. ¶ 21.)  Upon review of the public documentation for that mortgage, Plaintiff learned that the mortgage was given in return for an assignment of rents from a recent lease agreement (the "Master Lease") that the Partnership had entered into with the Tenant.  (Id.; Master Lease, attached hereto at Ex. 3.)   Prior to his discovery of this information, Plaintiff had not been informed of either the Master Lease or the refinancing, although Defendant had a contractual obligation to provide Plaintiff with quarterly and annual reports concerning the Partnership operations, and a specific obligation to inform Plaintiff within 45 days of the nature of any refinancing, the income derived therefrom, and the disposition of any proceeds related thereto.  (Compl. ¶ 23; id. Ex. A §§ 12.1-12.4.)  Plaintiff also

discovered the presence of several other loans from other banks that the Partnership had taken in the past, but of which Plaintiff had not been made aware. (Compl. ¶ 24.) These included a mortgage from Royal Bank of Pennsylvania to the Partnership and a loan from Atlantic Bank and Trust Company. (Id.)

Following his discovery of the refinancing, the Master Lease and the other loans, Plaintiff requested documentation surrounding these transactions as well as an accounting of the loan proceeds and an accounting of the proceeds from the operation of the Property from January 1998 to the present. (Compl. ¶ 25; Compl. Ex. D.) On August 21, 2002, after Defendant failed to produce information in response to this request, Plaintiff commenced this action pursuant to the Court's diversity jurisdiction. The Complaint alleges claims against Defendant for breach of the Partnership Agreement for failure to provide information (Count I), breach of Defendant's duty to provide information under the Pennsylvania Limited Partnership Act (Count II), breach of the Partnership Agreement for failure to distribute proceeds of refinancing (Count III), and breach of fiduciary duties (Count IV).

C.    The Court Enters A Stipulation And Proposed Order
        For Preliminary Injunctive Relief

On March 26, 2003, this Court entered the Order with respect to Plaintiff's demand for information pursuant to Sections 12.1, 12.4, 11.1A of the Partnership Agreement and 15 Pa. C.S.A. § 8525. The Order compelled Defendant to produce information about the Partnership and provides, *inter alia*, that "[p]rior to entering into any lease, lease amendment, sale or refinancing of the Property, Defendant shall provide Plaintiff with ten (10) days advance written notice." (Order ¶ 5.) The purpose of the notice provision agreed to by the parties was to

-7-

enable Plaintiff to take steps to protect the Sale or Refinancing Proceeds to satisfy all or part of

any judgment that is entered against Defendant in this case.  The Order further required

Defendant to "provide Plaintiff with an accounting of the loan proceeds from any loans taken by

the Partnership or leases entered into by the Partnership between the period of January 1, 1998

through the present" on or before June 15, 2003.  (Order ¶ 3.)  Plaintiff has not yet received such

an accounting.

> **D.    1101 North 63rd Street**

Documents produced by Defendant to Plaintiff in this action concerning the

refinancing of the Partnership's Property in 2002 by Sun Bank demonstrate that only

approximately $2.3 million of the proceeds of that refinancing went to pay off the mortgage loan

on the Property, which had been taken from Royal Bank in or around 1998.  (See Settlement

Statement, attached hereto at Ex. 4; Letter from Sun Bank to Defendant, attached hereto at Ex.

5.)  They show instead that $1.278 million of the $ 3.6 million refinancing proceeds was applied

to pay off an existing mortgage on 1101 North 63rd Street which had been taken from Sun Bank.

(Id.)  1101 North 63rd Street is not a property owned by the Partnership but, rather, it is owned

exclusively by 1101 North 63rd Street LLC, a Pennsylvania Limited Liability Company of which

Defendant is the sole member and which is therefore an Affiliate of the General Partners as

defined by the Partnership Agreement.  (Compl. Ex. A at 2-3; Unanimous Written Consent,

attached hereto at Ex. 6.)

Plaintiff was never asked to approve the arrangement between the Partnership, the

General Partner's affiliate, and Sun Bank in 2002.  Indeed, Plaintiff was not even told of the

refinancing.  Curiously, although 1101 North 63rd Street LLC was required to submit a

-8-

unanimous consent of its shareholders (*i.e.*, Defendant) to the transaction (attached hereto at Ex.

6), the Partnership did not likewise provide the required consent of the limited partner.  Rather

Defendant, as General Partner, merely signed an indemnification agreement (attached hereto at

Ex 7).  The Partnership then entered into a mortgage for the full $3.6 million.  (219 North Broad

Mortgage, attached hereto at Ex. 8; Promissory Note, attached hereto at Ex. 9.)  1101 N. 63rd

Street LLC entered into a cross-collateral mortgage for only $800,000 (Hypothecation, attached

hereto at  Ex.10; 1101 North 63rd Street Mortgage, attached hereto at Ex. 11 ), and the

Partnership entered into a Subordination Agreement for what Defendant apparently described as

"approximately $500,000."  (Exhibit A to Subordination Agreement, attached hereto at Ex. 12.)

### E.    Defendant Provides Notice Of Intent To Sell Partnership Property

On June 10, 2003, Defendant faxed Plaintiff a letter providing written notice of an

intended transaction (the "Transaction")-- *i.e.*, that the Tenant had provided written notification

that it would like to exercise its option to purchase the Property consisting of 219 to 225 North

Broad Street, Philadelphia, PA for the price specified in the Master Lease--$4.2 Million.  (Ex. 1.)

Defendant also gave Plaintiff notice that he intends to proceed with the Transaction and to

perform the tasks that the Partnership is obligated and/or entitled to undertake pursuant to the

Master Lease including, but not limited to, obtaining an appraisal and pursuing the execution of a

formal agreement of sale.  (Exs.1 & 2.)  Defendant's counsel subsequently notified Plaintiff's

counsel that the buyer would like to close on the sale on June 30, 2003.  (See Ex. 2.)

## III.   ARGUMENT

Because the Transaction will create Sale or Refinancing Proceeds as defined by the Partnership Agreement upon closing, because those Sale or Refinancing Proceeds are 40% payable to Plaintiff under the Partnership Agreement, and because the remainder of the Sale or Refinancing Proceeds may be necessary to satisfy any judgment against Defendant in this case, Plaintiff requests this Court to enter preliminary injunctive relief and order that the proceeds of the sale of the Property be placed in an escrow account until resolution of this litigation so that Plaintiff's claims against Defendant are preserved.   Furthermore, Defendant has indicated that the proceeds from sale of the Partnership's Property will be used to pay down the entirety of the 2002 refinanced mortgage.  Under that scenario, at least $1.278 million of what would otherwise be  the Partnership's Sale or Refinancing Proceeds will be attributable to satisfying the prior mortgage on 1001 North 63rd Street.  Plaintiff contends that satisfying the 1101 North 63rd Street mortgage (a non-Partnership property affiliated with the General Partner) from the sale of Partnership Property is an arrangement that must be approved in writing by Plaintiff prior to closing.  (Compl. Ex. A § 7.2A.)  Plaintiff further contends that such misuse of the Partnership proceeds has and will inherently cause harm to the Partnership and to Plaintiff and must therefore be prevented.  In the alternative, and in the event that Defendant is permitted to use the Sale or Refinancing Proceeds to pay down the prior mortgage on 1101 North 63rd Street, Plaintiff moves this Court to enter a preliminary injunction enjoining Defendant from engaging in any sale or refinancing of the 1101 North 63rd Street property, or placing any other encumbrance on that property pending a resolution of this lawsuit or unless permitted to do so by an Order of the Court.

A.      **Applicable Standard**

"The purpose of a preliminary injunction is merely to preserve the relative

positions of the parties until a trial on the merits can be held.  Given this limited purpose, and

given the haste that is often necessary if those positions are to be preserved, a preliminary

injunction is customarily granted on the basis of procedures that are less formal and evidence that

is less complete than in a trial on the merits."  University of Texas v. Camenisch, 451 U.S. 390,

395 (1981).  In considering a request for a preliminary injunction, a district court considers:

(1) whether the movant has shown "a reasonable probability of eventual success on the merits;"

(2) whether the movant will be "irreparably harmed if relief is not granted;" (3) "the possibility

of harm to other interested persons from the grant or denial of the injunction;" and (4) "the public

interest."  Green Stripe v. Berny's Internacionale, 159 F. Supp. 2d 51, 55 (E.D. Pa. 2001).

Courts in this District have entered preliminary injunctions in the form of escrow accounts to

protect proceeds from sales of property from being dispersed prior to the end of litigation.  See

id. at 56-58; see also Hembach v. Quikpak Corp., No. Civ. A. 97-3900, 1998 WL 314671, at *1-

2 (E.D. Pa. June 15, 1998).

B.      **Plaintiff Is Entitled To A Preliminary Injunction**

Plaintiff satisfies the requirements for a preliminary injunction in the nature of an

escrow account with respect to Sale or Refinancing Proceeds created from the Transaction.

Plaintiff also meets the requirements for a preliminary injunction ordering Defendant not to

deduct from the Sale or Refinancing Proceeds any amounts over the $2.3 million attributable to

the satisfaction of the 219 North Broad Street Royal Bank Mortgage in April 2002 and any other

required closing costs.  Plaintiff has not consented to the use of those amounts to pay off the

-11-

obligations of an entity affiliated with the General Partner.  Plaintiff likewise meets the

requirements for an alternative preliminary injunction enjoining Defendant from engaging in any

sale or refinancing of the property located at 1101 North 63rd Street or placing any other

encumbrance on that property pending a resolution of this litigation or unless permitted to do so

by an Order of the Court.

        First, Plaintiff has more than a reasonable probability of eventual success on the

merits.  This Court has already issued a preliminary injunction ordering Defendant to provide

information pursuant to Sections 12.1, 12.4, and 11.1A of the Agreement.  Plaintiff is also

unquestionably entitled to a percentage of the proceeds from the Transaction since the proceeds

from the sale of the Property constitute Sale or Refinancing Proceeds as defined by the

Agreement.  (See Compl. Ex. A at 5.)

        Moreover, it is beyond dispute that the Partnership Property (which is the subject

of the proposed sale) was part of a $3.6 million refinancing in 2002, that only $2.3 million of that

amount was used to pay off its existing mortgage, that approximately $1.3 million of that amount

was used to pay off the mortgage of an affiliate of the General Partner, and that Plaintiff never

gave his written consent to that event.  (See II.A, B & D, supra.)  The proceeds from the planned

sale of the Property are expected to pay down the entirety of the April 2002 refinancing and,

therefore, at least $1.278 million of the Partnership Sale or Refinancing Proceeds will be

attributable to satisfying the mortgage on 1101 North 63rd Street.  Satisfying the 1101 North

63rd Street mortgage from the sale of the Partnership Property will inherently benefit Defendant

at the expense of the Partnership and, as a transaction between the Partnership and the General

Partner's affiliate, it likewise requires Plaintiff's prior written approval.  (See Compl. Ex. A

-12-

§ 7.2A.) Moreover, satisfaction of the 1101 North 63rd Street mortgage will constitute self-dealing in violation of fiduciary duty imposed on partners by Pennsylvania law. See Clement v. Clement, 260 A.2d 728, 729 (Pa. 1970) (ruling that fiduciary duty between partners precludes partner from engaging in self-dealing, diverting partnership assets, commingling partnership funds with his own, or generally dealing loosely with partnership assets); Bracht v. Connell, 170 A. 297, 299 (Pa. 1933) (partners are "under a duty to act for the benefit of all and not to gain individual advantage at the expense or to the detriment of other partners.").

Second, it is likely that Plaintiff will be irreparably harmed if the Court were to deny preliminary relief in the form of an escrow account with respect to the proceeds from the Transaction. Likewise, Plaintiff will be harmed if the Court does not issue an order either preventing the proceeds of the sale from being depleted to pay the 1101 North 63rd Street mortgage without Plaintiff's consent or, in the alternative, forbidding any sale, refinancing or other encumbrance with respect to 1101 North 63rd Street during the pendency of this action. Plaintiff believes that Defendant will likely not give Plaintiff his rightful share of the proceeds from the Transaction. Plaintiff also believes that some or all of the remaining proceeds from the Transaction will likely be dissipated by Defendant prior to a judgment in this case. Specifically, Plaintiff believes that Defendant will sell or otherwise encumber the 1101 North 63rd Street Property and disburse its proceeds prior to judgment in this case.

Third, there will be no harm to Defendant or the Tenant if the Court grants a preliminary injunction. The orders will only affect the use of the proceeds of the sale, they will not affect the Partnership's ability to transfer title to the Property or to receive the Purchase Price.

-13-

Fourth, the public interest is furthered by the requested relief.  This relief will preserve the status quo.  In addition, it will help ensure that partnership duties are upheld and that partners will deal with one another in a forthright, honest and conscientious manner.  This relief will help ensure that "fiduciary relationship between partners," which is deeply rooted in Pennsylvania law, is preserved.  See, e.g., Clement, 260 A.2d at 729 ("partners owe a fiduciary duty one to another"); see also Bracht, 170 A. 299 ("Partners stand in a fiduciary relationship"); Packer v. Magellan Fin. Corp., No. Civ. A. 98-380, 1999 WL 371652, at *4 (E.D. Pa. June 7, 1999) ("Under Pennsylvania law, it is clear that as a partner, [defendant] owed a fiduciary duty to his co-partners, the plaintiffs.").  It will also sustain the public interest to require Defendant to comply with his obligations to Plaintiff under the Partnership Agreement.  See Green Stripe, 159 F. Supp. 2d at 51 ("public interest in requiring parties to live up to their legal contracts").

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court to grant his request for a preliminary injunction and enter the proposed Order submitted with this Motion.

Respectfully submitted,

Neill C. Kling (53261)
David W. Engstrom (76178)
**HARKINS CUNNINGHAM**
2800 One Commerce Square
2005 Market Street
Philadelphia, PA 19101-7042
Tel:    (215) 851-6700
Fax:    (215) 851-6710

Dated: June 24, 2003

## CERTIFICATE OF SERVICE

I, David W. Engstrom, hereby certify that on June 24, 2003, I caused to be served

a true and correct copy of Plaintiff's Emergency Motion for Preliminary Injunction,

Memorandum in Support thereof, Exhibits, proposed Order and proposed Alternative Order, by

Federal Express upon:

> Anthony Valenti, Esquire
> Cureton Caplan, P.C.
> 950B Chester Avenue
> Delran, NJ  08075.

David W. Engstrom